1  WILSON TURNER KOSMO LLP
   MARISSA L. LYFTOGT (259559)
2  NAOMI C. PONTIOUS (288580)
   402 West Broadway, Suite 1600
3  San Diego, California 92101
   Telephone: (619) 236-9600
4  Facsimile: (619) 236-9669
   E-mail: mlyftogt@wilsonturnerkosmo.com
5  E-mail: npontious@wilsonturnerkosmo.com

6  Attorneys for Defendants
   OPTUM SERVICES, INC.; UNITED
7  HEALTHCARE SERVICES, INC.;
   GERALD RAMOS

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  SOUTHERN DIVISION

12 | ROBIK RASNAVAD,                        | Case No. 8:21-cv-02119-CJC (DFMx)
13 |             Plaintiff,                  | **POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**
14 |        v.                               |
15 | OPTUM SERVICES, INC., a Delaware        |
   | corporation; UNITED HEALTHCARE          | Date:     May 23, 2022
16 | SERVICES, INC., a Minnesota             | Time:     1:30 p.m.
   | Corporation; GERALD RAMOS, an           | Complaint Filed: September 20, 2021
17 | individual; and DOES 1-20,              | Hon. Cormac J. Carney
   |                                         | Courtroom: 9B
18 |             Defendants.                 | Magistrate Douglas F. McCormick
                                               Courtroom: 6B
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................. 6

II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................. 7

       A.     In Its Job Offer, United Notified Plaintiff of The Requirement to Arbitrate
              All Future Employment Disputes .................................. 7

       B.     Plaintiff Refuses to Arbitrate, Thus Necessitating This Motion ........................ 8

III.   LEGAL STANDARD ......................................................... 9

IV.    THE PARTIES CLEARLY AND UNMISTAKABLY DELEGATED THE
       QUESTION OF ARBITRABILITY TO THE ARBITRATOR ................................. 10

V.     THE ARBITRATION AGREEMENT IS VALID AND  COVERS PLAINTIFF'S
       CLAIMS ........................................................... 12

       A.     The Arbitration Agreement Covers Plaintiff's Claims .................................. 12

       B.     The Arbitration Agreement is Valid ........................................... 13

       C.     The Arbitration Agreement is Not Unconscionable ....................................... 15

              1.     The Arbitration Agreement is Not Procedurally Unconscionable .......... 15

              2.     The Arbitration Agreement is Not Substantively Unconscionable ......... 16

VI.    CONCLUSION ................................................................. 20

POINTS AND AUTHORITIES ISO DFENDANTS' MTN. TO COMPEL
ARBITRATION AND STAY PROCEEDINGS

1

## **TABLE OF AUTHROTIES**

2

**Federal Cases**                                                              **Page(s)**

3

4
*Asfaw v. Lowe's HIW, Inc.*,
   2014 WL 1928612 (C.D. Cal. May 13, 2014) (Kronstadt, J.)..............................9

5

6
*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986)....................................................................10, 13

7

8
*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ...................................................................10

9

10
*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006)..................................................................................9

11

12
*Cancer Ctr. Assoc. for Research and Excellence, Inc. v. Philadelphia Ins. Co.*,
   2015 WL 1766938 (E.D. Cal. Apr. 17, 2015) ........................................9

13

14
*Chiron Corp. v. Ortho Diagnostics Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ...............................................................12

15

16
*Dean Witter Reynolds Inc. v. Byrd*,
   470 U.S. 213 (1985)................................................................................10

17

18
*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018)...............................................................................9

19

20
*Hart v. Charter Commc'ns, Inc.*,
   2017 WL 6942425 (C.D. Cal. Nov. 8, 2017) ........................................10

21
*Hernandez v. United HealthCare Services, Inc.*,
   2018 WL 7458649 (C.D. Cal. July 26, 2018) ...................................6, 12

22

23
*In re Holl*
   925 F.3d 1076 (9th Cir. 2019) ...............................................................13

24

25
*McLaurin v. Russell Sigler, Inc.*,
   155 F. Supp. 3d 1042 (C.D. Cal. 2016).....................................................9

26

27
*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983).......................................................................................9

28

-3-                   Case No. 8:21-cv-02119

POINTS AND AUTHORITIES ISO DFENDANTS' MTN. TO COMPEL
ARBITRATION AND STAY PROCEEDINGS

*Paolino v. United Health Care Servs., Inc.*,
   No. SACV1900557AGDFMX, 2019 WL 2601348 (C.D. Cal. June 3,
   2019) .................................................................................................... 6, 11, 12

*Perry v. Thomas*,
   482 U.S. 483 (1987) ......................................................................................... 9

*Poublon v. C.H. Robinson Co.*,
   846 F.3d 1251 (9th Cir. 2017) ................................................................ 10, 20

*Razzaghi v. UnitedHealth Grp.*,
   *No.* SACV1801223AGJDEX, 2018 WL 7824552 (C.D. Cal. Sept. 17,
   2018) ................................................................................................ 6, 9, 11, 12

*Rivera v. Uniqlo Cal., LLC*,
   2017 WL 6539016 (C.D. Cal. Sep. 9, 2017) (Kronstadt, J.) ....................... 14, 19

*Romo v. CBRE Group, Inc.*
   (C.D. Cal., Oct. 3, 2018, No. 818CV00237JLSKES) 2018 WL
   4802152 (Staton, J.) .................................................................................. 16, 19

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ....................................................................... 13

*Steiner v. Apple Comput., Inc.*,
   2007 WL 4219388 (N.D. Cal. Nov. 29, 2007) ............................................. 10

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
   368 F.3d 1053 (9th Cir. 2004) ........................................................................ 9

*Wagner v. Stratton Oakmont Inc.*,
   83 F.3d 1046 (9th Cir. 1996) ........................................................................ 20

**State Cases**

*Baltazar v. Forever 21, Inc.*,
   62 Cal. 4th 1237 (2016) ................................................................................ 15

*McManus v. CIBC World Markets Corp.*,
   109 Cal. App. 4th 76 (2003) ......................................................................... 15

*Mission Viejo Emergency Med. Assocs. v. Beta Healthcare Grp.*,
   197 Cal. App. 4th 1149 (2011) ..................................................................... 15

-4-                                        Case No. 8:21-cv-02119

POINTS AND AUTHORITIES ISO DFENDANTS' MTN. TO COMPEL
ARBITRATION AND STAY PROCEEDINGS

*Nyulassy v. Lockheed Martin Corp.*,
    120 Cal. App. 4th 1267 (2004) ...................................................................16, 17

*Serafin v. Balco Properties Ltd., LLC*,
    235 Cal. App. 4th 165 (2015) ...........................................................................13

*Sonic Calabasas, A, Inc. v. Moreno*,
    57 Cal. 4th 1109 (2013) ....................................................................................16

**Federal Statutes**

9 U.S.C. § 2........................................................................................................10

Federal Rule of Civil Procedure § 12(b)..............................................................9

**State Statutes**

California Civil Code § 1550...............................................................................13

POINTS AND AUTHORITIES ISO DFENDANTS' MTN. TO COMPEL
ARBITRATION AND STAY PROCEEDINGS

# I.   **INTRODUCTION**

This is an employment dispute between plaintiff Robik Rasnavad ("Plaintiff") and his former employer involving claims for alleged disability discrimination, wrongful termination, and retaliation.   In direct contravention of Plaintiff's express contractual agreement to arbitrate these claims, Plaintiff filed this case in civil court and has refused to stipulate to arbitration, thus necessitating this petition.

This case belongs in arbitration because as both part of his job offer ***and*** in a formal contract signed during his employment with United HealthCare Services Inc.[1] ("United"), Plaintiff agreed to arbitrate all potential employment-related disputes (such as those asserted here) before the American Arbitration Association ("AAA"). Indeed, Plaintiff also expressly agreed that the arbitrator— rather than any court— would resolve any disputes regarding the scope, validity or the enforceability of United's Arbitration Agreement.

Having received the benefits of these contractual promises – i.e., employment with United – Plaintiff cannot now ignore his contractual promises simply because his attorney prefers an alternative venue.  Plaintiff agreed to arbitrate and executed an agreement that has been repeatedly upheld by the Central District as a valid and enforceable contract. *See Paolino v. United Health Care Servs., Inc.*, No. SACV1900557AGDFMX, 2019 WL 2601348, at *3 (C.D. Cal. June 3, 2019)(Granting motion to compel arbitration for United,); *see also Razzaghi v. UnitedHealth Grp., No.* SACV1801223AGJDEX, 2018 WL 7824552, at *4 (C.D. Cal. Sept. 17, 2018)(same); *Hernandez v. United HealthCare Services, Inc.*, 2018 WL 7458649, at *8 (C.D. Cal. July 26, 2018)(same.) Plaintiff's attempts to evade this contract now are without merit.

---

[1] Plaintiff has brought suit against two wholly owned subsidiaries of United Health Group, Optum Services, Inc., and United Health Services Inc. (Pontious Decl., Exh 1, Compl. ¶¶ 2, 6 and Exh 2, Weedman Decl. ¶ 4; see also DKT. No. 2.) Plaintiff claims both of these Defendants were his employer and/or were agents of one another. (Pontious Decl, Exh 1, Compl. ¶¶ 2, 6; Exh 2.)  All served Defendants have stipulated to moving this matter to arbitration pursuant to the Arbitration Agreement. (Pontious Decl.), ¶ 2.)

1    Accordingly, Defendants United HealthCare Services, Optum Services, Inc.,

2  and Gerald Ramos (collectively "Defendants") request the Court enforce the

3  Arbitration Agreement entered into by Plaintiff and order Plaintiff to arbitrate all of

4  his claims and dismiss this action from federal court.

5  **II.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

6        **A.     In Its Job Offer, United Notified Plaintiff of The Requirement to
              Arbitrate All Future Employment Disputes**

7

8    On December 9, 2020, United offered Plaintiff a position as a Technical

9  Desktop Support in the IT Support Services department.  (Weedman ¶ 6, Exh 2.)

10  Included in United's December 9, 2020 offer letter, United advised Plaintiff that the

11  offered position included an Arbitration Policy which "is a binding contract between

12  you and UnitedHealth Group to resolve through arbitration all covered employment

13  related disputes." (Weedman ¶ 6, Exh. 2.)  Plaintiff was advised both that this policy

14  would be "a condition of your employment" in the offered position, and that "[b]y

15  accepting employment with UnitedHealth Group, you agree to be bound by the terms

16  of the Arbitration Policy." (*Ibid.*).  Finally, to ensure that there was no ambiguity as to

17  the terms of this Policy, the Arbitration Policy was hyperlinked in the offer letter

18  under the label "Arbitration Policy, accessible here", permitting Plaintiff to fully

19  consider before accepting his employment.  (Weedman ¶ 6.)

20    Shortly after receipt of the offer letter, on December 12, 2020, Plaintiff

21  accessed and reviewed the Arbitration Policy. (Weedman ¶ 8.)   The Agreement

22  states, in bold letters, on the first page under the heading "Statement of Intent":

23        This [Employment Arbitration] Policy is a binding contact
        between UnitedHealth Group and its employees. **Acceptance of**
24        **employment   or   continuation   of   employment   with**
        **UnitedHealth Group is deemed to be acceptance of this**
25        **Policy.**

26  (Arbitration Agreement, p. 1 ¶ A)(emphasis in original); Exh. 3 to Weedman Decl.)

27    The Arbitration Agreement also states:

28        This [Arbitration] Policy creates a contract between
        UnitedHealth Group and employee requiring both parties

1
2
3
4

> to resolve employment-related disputes (except the excluded disputes listed below) that are based on a legal claim through final and binding arbitration. Arbitration is the exclusive forum for the resolution of such disputes, and the parties mutually waive their right to a trial before a judge or jury in federal or state court in favor of arbitration under the [Employment Arbitration] Policy.

5   (Arbitration Agreement, p. 1, § B, ¶ 1, Exh. 3 to Weedman Decl.)

6   On December 12, 2020, approximately fifteen (15) days before the start of his

7   employment, Plaintiff expressly accepted the Arbitration Agreement by electronically

8   signing it and acknowledging the agreement by typing the "I agree" button and

9   affixing his electronic signature. Arbitration Agreement, Exh. 3; Weedman Decl. at ¶

10  10.)  Plaintiff further agreed that his "electronic signature is the legal equivalent of

11  signature." *Ibid.*

12  Plaintiff thereafter worked for UHG and Optum from December 27, 2020, until

13  his separation on July 29, 2021.  *See* Complaint ¶¶ 12-21 (Exh. 1 to Declaration of

14  Naomi C. Pontious, ("Pontious Decl.").); Weedman Decl. ¶ 4.

15  **B.    Plaintiff Refuses to Arbitrate, Thus Necessitating This Motion**

16  On November 20, 2021, Plaintiff filed this lawsuit alleging seven (7)  causes of

17  action arising out of his employment with UHG:  (1) Intentional Infliction of

18  Emotional Distress; (2) Disability Discrimination in Violation of the Fair Employment

19  and Housing Act; (3) Failure to Provide Reasonable Accommodations in Violation of

20  The Fair Employment and Housing Act; (4) Failure to Engage in a Good Faith

21  Interactive Process In Violation of the Fair Employment and Housing Act; (5)

22  Retaliation in Violation of the Fair Employment and Housing Act; (6) Failure to

23  Prevent Retaliation and Discrimination in Violation of the Fair Employment and

24  Housing Act; and (7) Wrongful Termination  in Violation of Public Policy. (Pontious

25  Decl., Exh 1, Complaint p. 1.) On November 29, 2021, Plaintiff amended the

26  Complaint to included United as a Defendant.  (Pontious Decl, ¶ 4, Exh. 2.)

27  On November 18, 2021, Defendants notified Plaintiff's counsel of the

28  Arbitration Agreement and requested Plaintiff stipulate to arbitration.  (Pontious Decl.

POINTS AND AUTHORITIES ISO DFENDANTS' MTN. TO COMPEL
ARBITRATION AND STAY PROCEEDINGS

¶ 5.) However, Plaintiff's counsel refused to submit this matter to arbitration notwithstanding Plaintiff's prior express agreement to do so. (*Id.*)

## III. __LEGAL STANDARD__

"An employment contract is considered a contract evidencing a transaction involving commerce, and therefore is covered by the FAA." *Asfaw v. Lowe's HIW, Inc.*, 2014 WL 1928612, at *2 (C.D. Cal. May 13, 2014) (Kronstadt, J.) (internal citations and quotation marks omitted); *see also* Weedman Decl. ¶ 4 (United employs individuals and engages in commerce throughout the United States). In enacting the FAA, Congress sought to overcome judicial hostility to arbitration agreements. *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) ("Congress directed courts to abandon their hostility and instead treat arbitration agreements as 'valid, irrevocable, and enforceable.'"); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (explaining FAA enacted "[t]o overcome judicial resistance to arbitration" and granting motion to compel). The FAA not only places arbitration agreements on equal footing with other contracts, but also amounts to a "congressional declaration of a liberal federal policy favoring arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also McLaurin v. Russell Sigler, Inc.*, 155 F. Supp. 3d 1042, 1048 (C.D. Cal. 2016) (compelling arbitration, stating "the continuing weight of authority in favor of arbitration is undeniable."). Any doubts are to be resolved in favor arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25.

Dismissal is a proper mechanism by which to enforce an arbitration agreement. *Razzaghi v. UnitedHealth Grp.*, 2018 WL 7824552, at *4 (C.D. Cal. Sep. 17, 2018) (enforcing an arbitration agreement by dismissing the plaintiff's complaint); *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,* 368 F.3d 1053, 1060 (9th Cir. 2004) (Fed. R. Civ. P. 12(b)(6) is a proper procedural mechanism by which to enforce an arbitration agreement); *Cancer Ctr. Assoc. for Research and Excellence, Inc. v. Philadelphia Ins. Co.*, 2015 WL 1766938, at *2 (E.D. Cal. Apr. 17, 2015) (Fed. R.

Civ. P. 12(b)(1) is a proper procedural mechanism by which to enforce an arbitration agreement).

Furthermore, during the pendency of a motion to compel arbitration, it is proper to stay all proceedings and discovery obligations. *See, e.g., Steiner v. Apple Comput., Inc.*, 2007 WL 4219388, at *1 (N.D. Cal. Nov. 29, 2007) (collecting cases and reasoning that a stay of pretrial obligations pending resolution of a motion to compel arbitration is common practice and a proper means of conserving resources).

## IV.   THE PARTIES CLEARLY AND UNMISTAKABLY DELEGATED THE QUESTION OF ARBITRABILITY TO THE ARBITRATOR

The FAA provides that any arbitration agreement within its scope "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). However, even these gateway issues can be expressly delegated to the arbitrator by agreement of the parties. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

The Ninth Circuit has held that "incorporation of the [American Arbitration Association] rules [into an arbitration agreement] constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability" because the AAA rules provide "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement." *Brennan*, 796 F.3d at 1130–31; *see also Hart v. Charter Commc'ns, Inc.*, 2017 WL 6942425, at *8 (C.D. Cal. Nov. 8, 2017) (enforcing a delegation clause); *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1262 (9th Cir. 2017) (permissible for an agreement to incorporate AAA rules by reference).

///

POINTS AND AUTHORITIES ISO DFENDANTS' MTN. TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Here, the Arbitration Agreement incorporates and binds the parties to the Employment Dispute Resolution Rules ("AAA Rules") of the American Arbitration Association except for issues specifically addressed by the Arbitration Agreement. Arbitration Agreement, p. 2-3, § D. Rule 6(a)-(b) of the AAA Rules, in turn, provides,

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement. . . The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.

Pontious Decl., Exh 3, the AAA Employment Arbitration Rules, Rule 6(a)-(b). Because nothing in the Arbitration Agreement conflicts with AAA Rule 6, Rule 6 governs.

In fact, United's Arbitration Agreement's delegation provision has been upheld multiple times in the Central District of California. For example, in *Paolino v. United Health Care Servs., Inc.*, 2019 WL 2601348 (C.D. Cal., June 3, 2019) (Guilford, J.) the court found that the Arbitration Agreement clearly and unmistakably delegated the issue of arbitrability to the arbitrator:

> Here, like in *Razzaghi*, the question of arbitrability has been delegated to the arbitrator. Why? Because the AAA Rules, which are expressly incorporated into United's Arbitration Policy, say so. (*See* Weedman Decl. at Exh. 3 ("The arbitrator shall have the power to rule on his or her own jurisdiction ....") And the Ninth Circuit has held that this express kind of incorporation is sufficient to prove the parties' delegated the issue of arbitrability to arbitration.

*Id.* at *3 (*citing Brennan*, 796 F.3d at 1130). The court also found the delegation provision was enforceable and, on that basis, granted the motion to compel arbitration. *Id*.

This finding is consistent with other decisions in the Central District that have considered the validity of this delegation provision. *E.g.*, *Razzaghi v. UnitedHealth Grp.*, 2018 WL 7824552, at *4 (C.D. Cal., Sep. 17, 2018) (Guilford, J.) (citing *Brennan* and dismissing case in favor of arbitration because the Arbitration

POINTS AND AUTHORITIES ISO DFENDANTS' MTN. TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Agreement incorporates the AAA rules, which delegate to the arbitrator the question of arbitrability); *Hernandez v. United HealthCare Services, Inc.*, 2018 WL 7458649, at *8 (C.D. Cal. July 26, 2018) (Carter, J.) (enforcing the delegation provision in UnitedHealth Group's arbitration agreement: "[s]ince the Court finds that the parties' agreement delegates arbitrability, Plaintiff's arguments that the arbitration agreement is unenforceable are properly left to the arbitrator to decide, per the express agreement of the parties.").

Accordingly, although United contends there are no issues with respect to formation, scope, and validity of the Arbitration Agreement, any such inquiry has been delegated to the arbitrator to decide, <u>not the Court</u>.  Thus, regardless of what arguments Plaintiff may raise in opposition to this motion, the Court lacks jurisdiction to resolve this issue and should therefore dismiss this case.  *See, e.g.*, *Paolino*, 2019 WL 2601348, at *3 (enforcing the delegation provision and granting a motion to dismiss pursuant to UnitedHealth Group's Employment Arbitration Policy); *Razzaghi*, 2018 WL 7824552, at *4 (same); *Hernandez*, 2018 WL 7458649, at *8 (finding delegation provision valid and compelling arbitration).

## V.     THE ARBITRATION AGREEMENT IS VALID AND COVERS PLAINTIFF'S CLAIMS

*Even if* the Court were to find that the parties did not agree to delegate issues concerning arbitrability to the arbitrator, the FAA nonetheless mandates enforcement of the Arbitration Agreement.  The court's role under the FAA is generally limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.  *See, e.g.*, *Chiron Corp. v. Ortho Diagnostics Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

### A.     The Arbitration Agreement Covers Plaintiff's Claims

Preliminarily, the Court should compel arbitration because the Arbitration Agreement clearly covers Plaintiff's claims.  An order to arbitrate "should not be denied unless it may be said with positive assurance that the arbitration clause is not

susceptible of an interpretation that covers the asserted dispute." *Commc'n Workers of America,* 475 U.S. at 650.  "Any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration."  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (internal citations and quotation marks omitted).

Here, The Arbitration Agreement broadly encompasses any dispute based on a legal claim "which arise out of or relate to employee's employment, application and selection for employment, and/or termination of employment." Arbitration Agreement p. 1 §B. The Agreement specifically contemplates that such disputes would include "claims derived from or that are dependent on the employment relationship. . .claims of discrimination and harassment; [and] retaliation claims." Arbitration Agreement p. 1 §B.

Plaintiff's causes of action for disability discrimination, failure to accommodate, failure to engage in the interactive process, retaliation, failure to prevent discrimination and retaliation, and wrongful termination all fall squarely within the parameters of the Arbitration Agreement.  Therefore, this matter is subject to mandatory arbitration.  *See Simula,* 175 F.3d at 721 ("To require arbitration, [Plaintiff's] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability.").  Accordingly, the Court should dismiss this case and hold Plaintiff to his promise to arbitrate his claims.

**B.     The Arbitration Agreement is Valid**

In determining whether a valid arbitration agreement exists, courts apply ordinary state-law principles of contract formation.  *In re Holl* 925 F.3d 1076, 1083 (9th Cir. 2019).  Under California law, a contract generally exists where there is (i) consent and (ii) consideration.  *See* Cal. Civ. Code § 1550.  "Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Serafin v. Balco Properties Ltd.,*

1   *LLC,* 235 Cal. App. 4th 165, 173 (2015) (internal citations and quotation marks
2   omitted).

3         Here, Plaintiff expressly consented to the Arbitration Agreement. Plaintiff
4   initially agreed to arbitrate his claims when he accepted the terms of employment as
5   conveyed to him in the December 9, 2020, offer letter.  Weedman Decl. ¶ 6; Ex. 2.
6   The offer letter, and accompanying Arbitration Agreement, made clear to Plaintiff that
7   arbitration was a condition of his employment with United and that "[a]cceptance of
8   employment or continuation of employment with [United] is deemed to be acceptance
9   of this [Arbitration] Policy." *Id.* Ex. 2 at p 5, § A, ¶ 2.

10        Days later, Plaintiff further confirmed his commitment to arbitrate disputes as
11   part of his acceptance of the job offer. On December 12, 2020, Plaintiff used his
12   unique username and password to open the Arbitration Agreement and acknowledge it
13   by confirming his agreement and affixing his electronic signature.  Weedman Decl. ¶¶
14   7-10, Exh. 3.  Having had multiple opportunities to read and acknowledge the
15   Arbitration Agreement, Plaintiff cannot now assert that he did not assent to its terms.
16   *See Rivera v. Uniqlo Cal.*, *LLC*, 2017 WL 6539016 (C.D. Cal. Sep. 9, 2017)
17   (Kronstadt, J.) ("Defendants were not obligated to explain the terms of the Arbitration
18   Agreement to Plaintiff because he had the opportunity to read it.").

19        The consideration element is met, too.  Plaintiff and United each agreed to
20   arbitrate employment or employment termination related claims against the other.
21   Arbitration Agreement at p. 1, § B, ¶ 1 ("Arbitration is the exclusive forum for the
22   resolution of such disputes, and the parties mutually waiver their right to a trial before
23   a judge or jury in federal or state court in favor of arbitration under the Policy.").  The
24   mutuality of the Arbitration Agreement qualifies as consideration.  *Strotz v. Dean*
25   *Witter* Reynolds, 223 Cal. App. 3d 208, 216 (1990) ("Where an agreement to arbitrate
26   exists, the parties' mutual promises to forego a judicial determination and to arbitrate
27   their disputes provide consideration for each other.").

28

POINTS AND AUTHORITIES ISO DFENDANTS' MTN. TO COMPEL
ARBITRATION AND STAY PROCEEDINGS

## C.    The Arbitration Agreement is Not Unconscionable

Because United has shown that an agreement to arbitrate exists and applies, it is Plaintiff's burden to prove that the Arbitration Agreement is not valid or enforceable. *Mission Viejo Emergency Med. Assocs. v. Beta Healthcare Grp.,* 197 Cal. App. 4th 1149, 1154 (2011).  An arbitration agreement can be invalidated only if there is a showing of *both* procedural and substantive unconscionability.  *Armendariz,* 24 Cal. 4th at 114.  The procedural element is determined by two factors: oppression and surprise due to unequal bargaining power.  *Id.*  The substantive element focuses on whether the agreement is unduly one-sided in favor of the employer without sufficient justification.  *Id.*  Plaintiff cannot credibly claim the Arbitration Agreement is unconscionable, either procedurally or substantively.

### 1.    The Arbitration Agreement is Not Procedurally Unconscionable

The Arbitration Agreement is not procedurally unconscionable as there was no "oppression or surprise." *McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76, 87 (2003).  Indeed, Plaintiff both reviewed and executed the Arbitration Agreement weeks before he began working for the company. Weedman Decl. ¶¶ 6-10, Exs. 2-3; Arbitration Agreement.  The Arbitration Agreement also clearly identified the applicable rules and procedures that would apply to the arbitration, and informed Plaintiff that arbitration would replace jury trial in federal or state court.  Arbitration Agreement, p.1, § B, ¶1.

The mere fact Plaintiff's employment with United was conditioned on him signing the Arbitration Agreement is insufficient for Plaintiff to establish procedural unconscionability.  Indeed, "the Ninth Circuit has concluded that 'the adhesive nature' of an employment-related arbitration provision, 'without more, would give rise to a low degree of procedural unconscionability at most.'" *Wu v. JPMorgan Chase Bank*, N.A., 2019 WL 4261880, at *5 (C.D. Cal. Aug. 5, 2019) (Kronstadt, J.) (quoting Poublon, 846 F.3d at 1261–62); *see also Baltazar v. Forever 21, Inc.*, 62 Cal. 4th

1237, 1245 (2016) (compelling arbitration where agreement was condition of employment and noting that employment contracts are not subject to the "same degree of scrutiny as contracts of adhesion that involve surprise or other sharp practices."). This is because "the conclusion that the Offer Letter is a contract of adhesion does not weigh heavily in the procedural unfairness analysis." *Romo v. CBRE Group, Inc.* (C.D. Cal., Oct. 3, 2018, No. 818CV00237JLSKES) 2018 WL 4802152, at *7 (Staton, J.) citing *Banamex USA*, No. CV-14-3049-PSG (PLAx), 2014 WL 12534772, at *4 (C.D. Cal. June 20, 2014) (internal citations omitted.) Thus, even if an offer letter is shown to be a contract of adhesion, the "resulting degree of procedural unconscionability arising from the adhesive nature of the Offer Letter is minimal" and insufficient to render the agreement invalid. *See Ibid.*

Because Plaintiff cannot carry his burden of establishing that the Arbitration Agreement is procedurally unconscionable, the Court need not even consider substantive unconscionability. *Armendariz*, 24 Cal. 4th at 113–14.

### 2.    The Arbitration Agreement is Not Substantively Unconscionable

Even if the Court were to find that the Arbitration Agreement is procedurally unconscionable (it is not), the Arbitration Agreement is still enforceable because there is no substantive unconscionability. "Substantive" unconscionability requires that the contract terms are "so one-sided as to shock the conscience" as opposed to "a simple old-fashioned bad bargain." *Sonic Calabasas, A, Inc. v. Moreno,* 57 Cal. 4th 1109, 1145 (2013). In assessing substantive unconscionability, the "paramount consideration" is mutuality of the obligation to arbitrate. *See, e.g.*, *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1287 (2004). Here, the Arbitration Agreement is mutual or bi-lateral and requires both parties to arbitrate future disputes regarding their employment relationship. Arbitration Agreement, p. 1, § B, ¶ 1 ("The Policy creates a contract between. . . both parties to resolve employment-related disputes. . .and the parties mutually waive their right to a trial before a judge or jury in

POINTS AND AUTHORITIES ISO DFENDANTS' MTN. TO COMPEL ARBITRATION AND STAY PROCEEDINGS

1    federal or state court in favor of arbitration under the [Employment Arbitration]

2    Policy.")

3           In *Armendariz*, the California Supreme Court held that an arbitration agreement

4    that covers un-waivable statutory employment rights is enforceable under California

5    law when it (1) provides for a neutral arbitrator, (2) does not limit statutorily imposed

6    remedies, (3) provides for adequate discovery, (4) provides for a written arbitration

7    award, and (5) provides that the employee would not be required to pay either

8    unreasonable costs or any arbitrators' fees or expenses as a condition of access to the

9    arbitration forum.  *Armendariz*, 24 Cal. 4th at 102.  As outlined below, this Arbitration

10   Agreement satisfies each of these requirements.

11          First, the Arbitration Agreement complies with the requirements of a neutral

12   arbitrator because it expressly provides that "[t]he AAA shall submit to each party an

13   identical list of nine (9) proposed arbitrators." (Arbitration Agreement, p.3 §D(2).)

14   Each party is further able to remove from consideration up to three names in each

15   round. (*Ibid.*)  Each party is further allotted "ten (10) business days. . . to cross of

16   names. . .number the remaining names in order of preference and return he list to the

17   AAA." *Ibid.* From this list, "if only one common name remains. . . that individual

18   shall be designated as the arbitrator," or otherwise reconcile the ranking provided by

19   both parties. *Ibid.* This process allows each party equal access to select a neutral

20   arbitrator of their choice to ensure a fair and just procedure.

21          Second, Plaintiff's right to recover any substantive remedies afforded by statute

22   is unrestricted.  *Armendariz*, 24 Cal. 4th at 103-104.  Specifically, the Arbitration

23   Agreement provides: "[t]he arbitrator shall have the authority to grant any remedy or

24   relief (including attorneys' fees where authorized by statute) that the arbitrator deems

25   just and equitable and which is authorized by and consistent with the applicable law. .

26   ." Arbitration Agreement, p. 4, § C (21)(b).

27          Third, the Arbitration Agreement permits adequate discovery.  As observed by

28   the California Supreme Court in *Armendariz*, arbitration is meant to be a streamlined

procedure and limitations on discovery are permissible. *Armendariz*, 24 Cal. 4th at 106, n.11 (discovery limits are an important component of the "simplicity, informality, and expedition of arbitration"). Thus, the Arbitration Agreement need not provide for unfettered discovery or even the same range of discovery available in civil proceedings. Rather, it need only provide for discovery in an amount "sufficient to adequately arbitrate" Plaintiff's claims. *Id.* at 106.

As a matter of right, the Arbitration Agreement allows both parties two eight-hour days of fact witness depositions, which amounts to sixteen hours' worth of fact witness depositions during which Plaintiff could easily depose six to ten witnesses. (Arbitration Agreement p. 5 §D(10)(c).) Parties are also equally entitled to eight hours of expert witness depositions, can propound one set of 25 requests for production of documents, are entitled to all discovery allowed under FRCP 35, and are entitled to a compound interrogatory requiring the identification of all potential witnesses, including the witnesses' names, addresses, phone numbers, and a brief description of each witness's subject of testimony. (Arbitration Agreement p. 4-5 §D(10)(a, b, d.)

Perhaps most crucially, in the event either party needs to take additional discovery, the Arbitration Agreement gives the Arbitrator unfettered discretion to allow additional discovery as he or she sees fit: "Arbitrator Authority – The arbitrator shall have the authority to resolve all issues concerning discovery that may arise between the parties." (Arbitration Agreement p. 5 §D(10)(e).) Moreover, the Arbitrator is expressly provided the authority to "allow additional discovery, and additional discovery may be conducted under the parties' mutual stipulation or as ordered by the arbitrator." (Arbitration Agreement p. 5 §D(10)(e).) Finally, Arbitration Agreement further incorporates the Employment Rules of AAA arbitration which also expressly provide that the "arbitrator shall have the authority to order such discovery. . . as the arbitrator considers necessary to a full and fair explorations of the issues in dispute." (Pontious Decl. Exh 3, AAA rules at p. 14 §9.)

POINTS AND AUTHORITIES ISO DFENDANTS' MTN. TO COMPEL
ARBITRATION AND STAY PROCEEDINGS

1   Courts have routinely found that far less discovery is sufficient under
2   *Armendariz. See e.g. Romo v. CBRE Group, Inc.* (C.D. Cal., Oct. 3, 2018, No.
3   818CV00237JLSKES) 2018 WL 4802152, at *8 (Staton, J.)(Agreement requiring
4   leave for any depositions, but granting Arbitrator discretion to grant addition
5   discovery sufficient); *See also Rivera*, 2017 WL 6530016, at *14 (approving an
6   arbitration agreement's discovery provision that granted the arbitrator unfettered
7   discretion to order more discovery: "Plaintiff is not required to make any such a
8   showing [of substantial need] before the arbitrator can exercise his or her discretion to
9   order more discovery.")

10   Under the Arbitration Agreement, each Party is entitled to a significant amount
11   of discovery as a matter of right, *and* the Arbitrator has unfettered discretion to allow
12   additional discovery in order to ensure full and fair adjudication of the issues in
13   arbitration. This is more than sufficient under *Armendariz* to satisfy the requirement
14   that adequate discovery be permitted.

15   Fourth, the Arbitration Agreement meets the *Armendariz* requirement that the
16   arbitrator issue written findings in order to permit the limited judicial review of an
17   arbitration award that is necessary "to ensure that an arbitrator's decision is consistent
18   with the protection of an employee's rights." *Armendariz,* 24 Cal. 4th at 107.  The
19   Arbitration Agreement states:

20   The award shall be in writing and shall be signed by the arbitrator.  If any
21   party requests, the arbitrator shall issue an opinion in writing, which shall
     set forth in summary form the reasons for the arbitrator's determination.
22   All awards shall be executed in the manner required by law.

23   Arbitration Agreement, p. 4, § C, ¶ 21(a).

24   Finally, the Arbitration Agreement complies with the requirement that an
25   employee cannot be required to "bear any type of expense that the employee would
26   not be required to bear if he or she were free to bring the action in court."
27   *Armendariz*, 24 Cal. 4th at 110–11.  The Arbitration Agreement states United "shall
28   pay 100 percent in excess of the first twenty-five dollars ($25) of the required AAA

administration fee" for an arbitration initiated by the employee.  Arbitration Agreement, p. 2, § C ¶ 1 (a), p. 4, § C, ¶ 25.

In sum, the Arbitration Agreement is neither procedurally nor substantively unconscionable, and it must be ***both*** to be unenforceable.  Consequently, the Court should either dismiss or stay this action pursuant to Section 3 of the FAA.[2] *Armendariz*, 24 Cal. 4th at 113–14; 9 U.S.C. § 3; *see also Wagner v. Stratton Oakmont Inc.*, 83 F.3d 1046, 1048 (9th Cir. 1996).

# VI.    CONCLUSION

Plaintiff agreed to arbitrate all disputes regarding the conditions of his employment and to delegate any formation, scope, or validity issues to the arbitrator. That ends the Court's inquiry and mandates dismissal of the action.  Nonetheless, even if the Court were to review the Arbitration Agreement, it is valid, covers Plaintiff's claims, and is neither procedurally nor substantively unconscionable.

Accordingly, the Court should grant Defendant's motion to dismiss and compel the matter to arbitration and stay these proceedings.  Furthermore, in the interests of conserving the Court's and the parties' resources, United respectfully requests that the Court stay all proceedings and discovery obligations during the pendency of this motion.

Dated:    February 3, 2022          **WILSON TURNER KOSMO LLP**

By:    */s/ Naomi C. Pontious*
MARISSA L. LYFTOGT
NAOMI C. PONTIOUS
Attorneys for Defendants
OPTUM SERVICES, INC., UNITED
HEALTHCARE SERVICES, INC, and
GERALD RAMOS

---

[2] The Arbitration Agreement contains a severability clause.  Arbitration Agreement, p. 5, § C, ¶ 23. Should this Court find any provision of the Arbitration Agreement unconscionable, Defendants requests that the Court sever that provision and enforce the remainder of the agreement.  See *Armendariz*, 24 Cal. 4th at 124; *Poublon*, 846 F.3d at 1272 (noting strong preference is to sever or modify terms unless agreement is "permeated by unconscionability").